Steven D. Jerome (#018420)
Colleen M. Reider (#027260)
**SNELL & WILMER L.L.P.**
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Telephone: (602) 382-6000
Facsimile: (602) 382-6070
E-mail:  sjerome@swlaw.com
         creider@swlaw.com
Proposed Attorneys for the Official Committee of Unsecured
Creditors

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: | Proceedings Under Chapter 11 |
| ARIZONA HEART INSTITUTE, LTD., | Case No. 2:10-bk-24062-GBN |
| Debtor. | **OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO DEBTOR'S MOTION FOR AN ORDER APPROVING SALE OF DEBTOR'S ASSETS** |
| | **Hearing Date:  September 21, 2010** <br> **Hearing Time:  2:00 p.m.** <br> **Location:        Courtroom #702** <br> **230 N. First Ave** <br> **Phoenix, AZ 85003** |

The Official Committee of Unsecured Creditors ("Committee") hereby submits its objection ("Objection") to the Arizona Heart Institute, Ltd.'s ("Debtor") proposed sale, as detailed in its *Motion for an Order Approving Sale of Debtor's Assets Under Asset Purchase Agreement* ("Sale Motion") [DE # 4].  The Committee objects to Sale Motion because, among other things, the Debtor has failed to provide sufficient evidence or documentation that this proposed sale has been negotiated in good faith, at arm's length, is in the best interests of the estate, and that the Proposed Buyer is a good faith purchaser under the Bankruptcy Code.  Accordingly, the Sale Motion must be denied.

///

This Objection is supported by the following Memorandum of Points and Authorities, the previously filed *Limited Objection to Debtor's Bid Procedures as Detailed in its Motion for an Order Approving Sale of Debtor's Assets* ("Committee Bid Procedures Objection") [DE # 142] and all other prior pleadings in this case, all of which are incorporated herein by this reference.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   FACTUAL BACKGROUND

Long before filing for Chapter 11 protection, on or around December 2009, Debtor and its proposed buyer, Hospital Development Company Number 1, Inc., a subsidiary of Vanguard Health Systems, Inc. (the "Proposed Buyer"), initiated negotiations for the sale of the Debtor's assets. *See* Sale Motion ¶¶ 9-16.   Subsequently, Debtor filed its voluntary petition on July 30, 2010 (the "Petition Date") and concurrently filed its Sale Motion, requesting the sale of its assets to the Proposed Buyer.  According to the Sale Motion, the Debtor will conduct the sale at the hearing on the Sale Motion on September 21, 2010.  Sale Motion at ¶ 18; DE # 130.[2]  Thus, Debtor wishes to sell the bulk of its assets within less than two months from the date of its Sale Motion.  As detailed below, Debtor is seeking approval of its Sale Motion, despite the fact that, among other things: (a) it has supplied little to no documentation relating to the proposed sale; and (b) it has conducted zero post-petition marketing and contradictory notice of the proposed sale.

### A.   Documents Supplied Post-Petition

Since filing the Sale Motion, the Debtor and other interested parties have provided the Court and the parties with minimal information relating to the sale.  For instance, the Sale Motion establishes that the Proposed Buyer will purchase the assets for approximately $6,050,000. Sale Motion at ¶ 18(d).  Nevertheless, Debtor's Summary of Schedules indicates that its assets are

---

[1] Due to, among other things, the expedited timeline, the Committee hereby reserves the right to supplement its Objection at a later date.

[2] The Debtor initially requested that the sale take place either at the hearing or two days prior. Pursuant to an Interim Order by this Court, the sale will take place at the hearing on September 21, 2010.  *See* DE # 130.

Snell & Wilmer
——— L.L.P. ———
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

Snell & Wilmer

—— L.L.P. ——

LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1   worth more than $16,925,342.28.  *See* DE # 59.  Debtor has provided no appraisal for the assets

2   to be sold or other documentation that the proposed sale price is appropriate.

3       Both the Committee and the U.S. Trustee have directly requested that the Debtor provide

4   the parties with documents relating to the proposed sale.  *See, e.g.*, DE # 147.  Additionally, at the

5   September 10, 2010 hearing on bidding procedures, the Court also directed that the Debtor supply

6   such documents including, but not limited to, copies of employment contracts negotiated in

7   accordance with the proposed sale.  Nevertheless, the Debtor has only provided the Committee

8   with: (1) informal balance sheets from 2008 – 2010, which indicate the unsecured creditors have

9   been financing the Debtor's operations; and (2) only one employment contract, which is an

10  unexecuted copy.[3]  The Committee has received no other information relating to this sale.  True

11  and correct copies of the Debtor's Balance Sheets Ending in December 2008, December 2009,

12  and May 2010, respectively are attached hereto as **Exhibits "A," "B," and "C"** and are

13  incorporated herein by reference.

14      Additionally, the Debtor has not requested that the hearing on the Sale Motion on

15  September 21, 2010 be an evidentiary hearing; nor has the Debtor noticed the hearing as such.

16  Accordingly, it appears that Debtor believes it has satisfied its evidentiary requirements for this

17  proposed sale without holding an evidentiary hearing or offering any evidence.

18      **B.    Marketing and Notice Post-Petition**

19      The Debtor has conceded that it has conducted zero post-petition marketing.  To date, the

20  earliest possible "Notice" that any potential buyer has received on this sale was given on

21  August 12, 2010, a mere month from the sale date.  *See* DE #'s 63, 64.  Further, the Debtor's

22  Notice of Auction and Sale Hearing was not approved by this Court until September 7, 2010.

23  *See* DE # 130.  Accordingly, the earliest possible date that potential buyers may have received a

24  detailed description of the sale and the Bidding Procedures applicable to the sale was a mere

---

25  [3] Although Debtor has supplied counsel for the Committee with this contract, it has informed
    counsel that the contract is confidential and counsel may not disclose the contract to its client, the
26  Committee.

- 3 -

fourteen (14) days prior to the proposed sale. Despite this sale notice, the Debtor has twice issued letters to its patients and staff indicating the Proposed Buyer, and no other parties, will purchase the Debtor's assets at a sale. *See* Letters from Edward B. Diethrich, founder and medical director of Debtor, dated August 20, 2010,[4] and dated September 2010,[5] respectively, true and correct copies of which are attached hereto as **Exhibits "D" and "E"** and are incorporated herein by reference.

## II. LEGAL ANALYSIS[6]

The Debtor's Sale Motion must be denied because it lacks any evidentiary proof that, among other things, the proposed sale has been negotiated in good faith, is in the best interest of the estate, and has been given adequate marketing. "A sale of substantially all of debtor's property outside the ordinary course of business, and without a Chapter 11 disclosure statement and plan, must be closely scrutinized." *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr.C.D. Cal. 1991) (citation omitted). "In approving any sale outside the ordinary course of business, the court must not only articulate a sufficient business reason for the sale, it must further find it in the best interest of the estate, i.e., it is fair and reasonable, that it has been given adequate marketing, that it has been negotiated and proposed in good faith, that the purchaser is proceeding in good faith, and that it is an 'arms-length' transaction." *Id.* (collecting cases). "It is the [Debtor's] duty to produce evidence probative of these issues." *Id.* at 842. Here, the Debtor failed to provide sufficient documentation relating to the proposed sale. The Sale Motion should be denied because the Debtor lacks evidence that, among other things, the proposed sale: (a) was negotiated in good faith and at arm's length; (b) is in the best interests of the estate; (c) was

---

[4] The August 20, 2010 Letter was received by a member of the Committee.
[5] The September 2010 Letter was supplied by Debtor's counsel.
[6] The Committee hereby incorporates by reference its previously filed Committee Bid Procedures Objection, as well as the U.S. Trustee's objections to the Sales Motion. *See* DE # 89.

Snell & Wilmer

— L.L.P. —

LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

appropriately marketed and noticed; and (d) entitles the Proposed Buyer to the protections afforded by 11 U.S.C § 363(m).[7]

### A.     <u>Debtor Lacks Evidence of Good Faith and Arm's Length Negotiation</u>

The Debtor bears the burden of showing that the purchase price is fair and reasonable and that it is negotiated in good faith. *Wilde Horse Enterprises, Inc.*, 136 B.R. at 841 (court must find that purchase price is "fair and reasonable" and that the price is offered in "good faith" when approving or denying the sale); *see also, In re Medical Software Solutions*, 286 B.R. 431, 439-40 (Bankr.D. Utah 2002) (same). In assessing the good faith of a sale, the bankruptcy court must look to the relationship between the parties and determine if the proposed sale was tainted by self-dealing. *Off. Comm. of Subordinated Bondholders v. Integrated Research, Inc.*, 147 B.R. 650, 657 (S.D.N.Y. 1992). Here, the Debtor fails to meet its burden of establishing that the proposed sale is fair and reasonable and negotiated in good faith. Rather, the Debtor asks its creditors and this Court to take its word that the terms of the sale were negotiated in good faith.[8]

Both the U.S. Trustee and the Committee have requested, either informally or through formal discovery, documentation relating to the proposed sale. Even more, this Court directed the Debtor to provide its creditors with this documentation at the September 10, 2010 hearing on the Bidding Procedures. For the most part, however, this document request remains outstanding. For example, the Debtor has stated on the record that at least 14 doctors have signed employment contracts with the Proposed Buyer. Nevertheless, to date, counsel for the Committee has received a copy of only one of those 14 employment contracts, and it is an unexecuted copy which all the Committee are not allowed to review. Without the ability to review this employment contract,

---

[7] Notably, the Debtor is requesting extraordinary relief – that this Court approve a proposed sale of substantially all of the Debtor's assets in a truncated period of time. The Committee's position is not that the Debtor's proposed sale is facially inappropriate, but rather that, under these circumstances, the Debtor has not set forth even the threshold amount of evidence that substantiates the proposed sale is appropriate.

[8] In fact, the Debtor has not noticed the upcoming Sale Motion hearing as an evidentiary hearing, nor has the Debtor requested it be an evidentiary hearing with the Court. See DE #'s 64 & 136. According to Local Rule 9014-2(b), a party must specifically request that the Court schedule an evidentiary hearing; otherwise, the hearing will automatically be non-evidentiary.

Snell & Wilmer

L.L.P.

LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

and all the other employment contracts, the Committee is unable to examine the contract provisions and analyze the terms of the proposed sale.[9]

Additionally, the Debtor has conducted absolutely no post-petition marketing and has provided inconsistent notice of the sale. Although the Debtor supplied a Notice of Auction and Sale Hearing, which was less than two weeks before the sale, the Debtor has also supplied the August 20, 2010 Letter and September 2010 Letter, which imply, if not state, that the sale is not open to other potential buyers. This insufficient marketing and notice, coupled with inadequate production of information makes it virtually impossible for the Committee, other interested parties, and this Court to determine whether this proposed sale has been negotiated at arm's length and in good faith. Accordingly, the Debtor has failed to establish its prima facie case that this proposed sale meets the requirements of Section 363 of the Bankruptcy Code.

### B.    Debtor Lacks Evidence that the Sale is In the Best Interests of the Estate

A Court cannot approve a sale outside the ordinary course of business where it is not in the best interests of the estate. *See, e.g.*, *In re Newlin*, 370 B.R. 870 (Bankr. M.D. Ga. 2007). In fact, where the Debtor fails to provide the Court with an adequate explanation as to how the parties arrived at a sale price, the Court could not find that the proposed sale was in the best interests of the estate. *Id.* at 876-877. As discussed above, the Debtor has not provided the Committee with sufficient evidence that the sale was negotiated at arm's length or in good faith. Similarly, the Debtor lacks evidence that the sale is in the best interests of the estate.

As it stands now, the Committee does not have information on any other "deals" or promises made between the Debtor, the Proposed Buyer, and the employees. The Committee cannot possibly establish from this limited information if the proposed sale is in the best interest of the estate. For example, according to the Debtor's schedules, the value of all of the Debtor's

---

[9] For instance, upon information and belief, prior to the proposed sale, doctors employed with the Debtor are bound by non-compete agreements. If the employment contracts serve to release the doctors of these non-compete restrictions, then the doctors are certainly gaining a benefit from the sale that, among other things, could in fact be a violation of the absolute priority rule. Interested parties have a right to know about these provisions.

Snell & Wilmer
——— L.L.P. ———
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

assets totals more than $16 million.  *See* Summary of Schedules, DE # 59.  Nevertheless, according to the Sale Motion, Debtor has agreed to sell the bulk of its assets for less than $7 million.  Debtor has provided absolutely no evidence as to how a sale of substantially all of its assets for less than half of its scheduled value is in the best interests of the estate.[10]

Of the limited information available to the Committee, the most alarming documents are the Debtor's financial statements.  According to financial documents supplied by the Debtor, in December 2008, the Debtor's accounts payables to vendors was approximately $507,996.  *See* Exhibit A, Balance Sheet for the Month Ended December 2008.  In December 2009, this figure raised to approximately $3,434,744.  *See* Exhibit B, Balance Sheet for the Month Ended December 2009.  Again, this figure raised in May 2010, this time to approximately $5,167,292.  *See* Exhibit C, Balance Sheet for the Month Ended May 2010.  Thus, over a period of 17 months, the Debtor's vendor payables have increased more than 1,000 percent.  Vendor payables are unsecured debts to the Debtor that all unsecured creditors must bear.  Consequently, the Debtor is asking the Committee to believe that the proposed sale is in the best interests of the estate, even though: (1) the assets may be sold for less than half of their value; (2) the sale will garner virtually no recovery for the unsecured creditors; (3) the unsecured creditors have been essentially financing the Debtor for the past 17 months; and (4) the insider-doctors will continue to practice with little to no impact because they do not have to pay the debts related to the Debtor that they helped cause.  Unless and until the Debtor can supply the Committee and this Court with evidence that overcomes these figures or that establishes the proposed sale is in the best interests of the estate, the Sale Motion cannot be approved.

///

///

---

[10] Debtor may allege that the value of the assets in its Schedules is incorrect; however, Debtor has not amended its Schedules.  In fact, courts regularly find that a statement of the property's price in its schedules has the same function as an appraisal.  *See, e.g.*, *In re Mama's Original Foods, Inc.*, 234 B.R. 500, 503 (Bankr.C.D. Cal. 1999).

Snell &amp; Wilmer
—— L.L.P. ——
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

C.  **Debtor Lacks Evidence of Appropriate Marketing or Notice of the Sale**

The Debtor has not proffered evidence that it has adequately marketed the assets or noticed the proposed sale. "In selling property of the estate, a trustee is required to market the property in the manner that is customary for property of the kind at issue." *See In re Mama's Original Foods, Inc.*, 234 B.R. 500, 503 (Bankr.C.D. Cal. 1999). "If there is a recognized market for the sale of the property, the trustee is required to sell the property in the recognized market." *Id.* "For certain kinds of property, there is a recognized market and an established value, so that the trustee may market the property by finding a purchaser willing to pay the market price." *Id.* at 504. "Absent a recognized market with established prices, a trustee is required to advertise the property to be sold. *The method of advertising must be whatever a prudent seller would choose for selling property of the kind at issue*." *Id.* (emphasis added) (finding the trustee did not meet the advertising requirement because the only "advertising" the trustee conducted was giving notice of the sale to two creditors.) *See Mama's Original Foods*, 234 B.R. at 504. "Giving notice to creditors is not a substitute for advertising." *Id.*

Like *Mama's Original Foods*, the Debtor has not proffered any evidence that the assets have been in fact sufficiently marketed. The Sale Motion states in passing that the Debtor had marketed the assets pre-petition, but no evidence of such marketing is provided. As discussed above, the Debtor has conceded that it has conducted absolutely no post-petition marketing of the sale. In fact, it appears that Debtor has conducted no marketing in all of 2010. *See* Sale Motion at n. 2 ("Because the Letter of Intent had been signed and negotiations with [the Proposed Buyer] were ongoing, [the Debtor] did not pursue [another potential buyer's] expression of interest."). Thus, despite the Debtor's contentions that the assets have been marketed and that the market has "spoken" with respect to the value of the assets and purchase potential, in actuality, the Debtor has not surveyed the market since at least 2009.

Additionally, the Debtor has also provided essentially no notice of the sale. Less than two weeks before the sale, the Debtor supplied a Notice of Auction and Sale Hearing. Despite the

Snell & Wilmer

—— L.L.P. ——
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

language in the Notice, it is clear from Debtor's conduct that it does not intend the sale to be a public auction; rather, the Debtor has always intended that its assets be sold solely to the Proposed Buyer and no other party. For instance, rather than conducting post-petition marketing, the Debtor has issued at least two letters since filing for bankruptcy. The first, dated August 20, 2010, is a letter by the Debtor's Founder and Medical Director that states, "I am pleased to inform you of recent news regarding the [Debtor]. Earlier this month, [Proposed Buyer] announced that it has signed **definitive agreements to acquire [Debtor].**" *See* Exhibit D, (Emphasis added). Nothing in this August 20, 2010 letter indicates that the sale is open to other bidders. This pre-ordained outcome is further evidenced by a second letter, dated September 2010, wherein the Debtor's Founder and Medical Director states, "The purchase of the [Debtor] by [Proposed Buyer] will occur through a section 363 sale, as part of a Chapter 11 reorganization. . . . After evaluating several potential partners,[11] [the Debtor] determined that [the Proposed Buyer] is the best fit." *See* Exhibit E. Once again, the Debtor describes a predetermined process that is not open to other bidders.

The lack of advertising and notice of this proposed sale along with the abbreviated time frame proposed by the Debtor effectively renders the sale closed to potential buyers other than the Proposed Buyer without providing any evidentiary support for this action. Thus, interested parties and the Court are wholly unable to determine if the proposed sale has been negotiated in good faith or if it is in the best interests of the estate.

### D.    Debtor Lacks Evidence that the Proposed Buyer is Entitled to 363(m) Protections

Due to, among other things, the Debtor's failure to provide sufficient evidence of a good faith negotiation, made in arm's length, for the best interests of the estate, and properly marketed and noticed, the Proposed Buyer is also not entitled to the protections afforded by Section 363(m)

---

[11] Curiously, the Debtor has failed to turnover the Debtor's "evaluators" or other potential bidders.

of the Bankruptcy Code.  Under Section 363(m), any "reversal or modification on appeal" of a sale "does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith."  11 U.S.C. § 363(m) (2010).  Thus, if this sale were later determined to be improper, it will not be undone if the Proposed Buyer purchased the Debtor's assets in good faith.  As detailed above, the Debtor has failed to identify that this sale is proposed in good faith.  Accordingly, the Proposed Buyer should not be entitled to the protections afforded by Section 363(m) unless and until this Court determines that the sale is offered in good faith.

**III.    CONCLUSION**

WHEREFORE, the Committee respectfully requests that the Court deny the Debtor's Sale Motion because the Debtor has failed to establish a prima facie case that its proposed sale is made in good faith, at an arm's length negotiation and is in the best interests of the estate.

DATED this 14th day of September, 2010.

SNELL & WILMER L.L.P.


By /s/ SDJ - 018420
        Steven D. Jerome
        Colleen M. Reider
        One Arizona Center
        400 E. Van Buren
        Phoenix, AZ  85004-2202
        Proposed Attorneys for the Official Committee of
        Unsecured Creditors

COPY of the foregoing mailed or e-mailed
this 14th day of September, 2010, to:

C. Taylor Ashworth                         tashworth@stinson.com
Christopher Graver                         cgraver@stinson.com
Josh L. Kahn                               jkahn@stinson.com
Stinson Morrison Hecker LLP
1850 N. Central Ave., Ste. 2100
Phoenix, AZ  85004
Attorneys for Debtor

Snell & Wilmer
——— L.L.P. ———
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

Snell & Wilmer
— L.L.P. —
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Edward K. Bernatavicius                    edward.k.bernatavicius@usdoj.gov
Patty Chan                                 patty.chan@usdoj.gov
Office of the U.S. Trustee                 ustpregion14.px.ecf@usdoj.gov
230 N. First Ave., Ste. 204
Phoenix, AZ  85003

Brian Sirower, Esq.                        brian.sirower@quarles.com
Mike Migliaccio, Esq.                      michael.migliaccio@quarles.com
QUARLES & BRADY LLP
Renaissance One
Two N. Central Ave.
Phoenix, AZ  85004-2391
Attorneys for NORTHERN TRUST, N.A.

James W. Kapp III                          jkapp@mwe.com
McDermott Will & Emery
227 W.t Monroe St.
Chicago, IL  60606-5096
Attorney for Hospital Development
Company Number 1, Inc., a subsidiary
of Vanguard Health Systems, Inc.

Frank F. McGinn                            ffm@bostonbusinesslaw.com
Bartlett Hackett Feinberg P.C.
155 Federal St., 9th Fl.
Boston, MA  02110
Attorneys for Iron Mountain
Information Management, Inc.

Gust Rosenfeld
Sean P. O'Brien                            spobrien@gustlaw.com
One E. Washington St., Ste. 1600
Phoenix, AZ  85004-2553
Attorney for VAS Communications, LLC

Linda Boyle                                linda.boyle@twtelecom.com
tw telecom inc.
10475  Park Meadows Dr., #400
Littleton, CO  80124
Attorney for tw telecom inc, formerly Time Warner Telecom Inc.

Mark S. Sifferman                          msifferman@clarkhill.com
CLARK HILL PLC
16427 N. Scottsdale Rd., Ste. 210
Scottsdale, AZ  85254
Attorney for E&V Investments, LLC

Randy Nussbaum, Esq.                       rnussbaum@nussbaumgillis.com
Peter M. Genrich, Esq.
John E. Parzych Esq.
NUSSBAUM & GILLIS, P.C.

14500 N. Northsight Blvd., Ste. 116
Scottsdale, AZ  85260

Theodore P. Witthoft                    twitthoft@cmpbglaw.com
COLLINS, MAY, POTENZA, BARAN &
GILLESPIE, P.C.
201 N. Central Ave., 22nd Fl.
Phoenix, AZ  85004-0608
Attorneys for Gateway Medical Investors, LLC

William Novotny                    william.novotny@mwmf.com
MARISCAL, WEEKS, McINTYRE &
FRIEDLANDER, P.A.
2901 N. Central Ave., Ste. 200
Phoenix, AZ  85012-2705
Attorney for Murli Raman, Fredric Klopf,
and Cardiac Consultants of Sun City, PLC


/s/ Beth Scott

11978066.1

# EXHIBIT A

Arizona Heart Institute, Ltd.
Balance Sheet
Accrual Basis
For the Month Ended December 31, 2008

Long-Term Assets:

Fixed Assets

| | | |
|---|---|---|
| Leasehold Improvements | $3,829,997 | |
| Amort - Leasehold Improvements | (923,886) | |
| Net Leasehold Improvements | | $2,906,111 |
| | | |
| Furniture & Equipment | 14,343,838 | |
| Accum Depr-F & E | (9,511,898) | |
| Net Furniture & Equipment | | $4,831,940 |
| | | |
| Deposits | 242,943 | |
| Other Assets-Investments | 3,641 | |
| Cash Surrender Value-Life Insurance | 497,538 | |
| Equity Investments | 184,851 | |
| Investment-AZ Heart Hospital | 919,428 | |
| Accr. Equity Income/(Loss)-AHH | 679,148 | |
| Total Other Assets | | $2,527,549 |
| Total Assets | | $14,836,907 |

Arizona Heart Institute, Ltd.
Balance Sheet
Accrual Basis
For the Month Ended December 31, 2008

## LIABILITIES

Current Liabilities:

| | | |
|---|---:|---:|
| Accounts Payable-Vendors | $507,996 | |
| Accounts Payable-Accrued | 319,281 | |
| A/P-401K Plan | 5,654 | |
| Flexible Spending Account | 4,728 | |
| Sales Tax Payable | 1,174 | |
| Total Accounts Payable | | $838,833 |
| Accrued Payroll | $422,610 | |
| Accrued Payroll Taxes | 316,028 | |
| Vacation Accrual | 414,166 | |
| Accrued Incentive Compensation | 961,397 | |
| Total Payroll Liabilities | | 2,114,201 |
| Accrued Property Taxes | | 94,917 |
| Deferred Program Revenue | | 338,385 |
| Current Portion - L/T Debt | | 3,033,636 |
| Total Current Liabilities | | $6,419,972 |

Long-Term Liabilities:

| | | |
|---|---:|---:|
| Deferred Compensation | $483,001 | |
| L/T Notes Payable | 3,108,565 | |
| L/T Capital Lease Obligation | 33,878 | |
| L/T Notes Payable-Shareholder | 1,255,000 | |
| Northern Trust LOC-Operating | 4,654,353 | |
| Northern Trust-LOC-Equip | 413,873 | |
| Total Long-Term Liabilities | | $9,948,670 |
| Total Liabilities | | $16,368,642 |

## EQUITY

| | | |
|---|---:|---:|
| Common Stock | $43,085 | |
| Paid In Capital | 1,565,858 | |
| Retained Earnings - Prior Years | 4,536,896 | |
| Accumulated Other Comprehensive Income | (194,085) | |
| Current Earnings | (7,483,488) | |
| Total Equity | | ($1,531,734) |
| Total Liabilities & Equity | | $14,836,908 |

Arizona Heart Institute, Ltd.
Income Statement - Accrual Basis
December 31, 2008

| | Month of December 2008 | Year-to-Date December 2008 |
|---|---|---|
| Total Net Patient Revenue | $3,091,379 | $39,479,230 |
| All Non-Patient Revenue | 80,202 | 3,631,202 |
| **Total Operating Revenue** | **$3,171,581** | **$43,110,432** |
| Operating Expenses: | | |
| SWBs - Physicians | 1,191,770 | 15,633,060 |
| SWBs - Non-Physicians | 1,234,794 | 15,911,471 |
| Medical Supplies | 174,386 | 2,840,319 |
| All Other Supplies | 38,953 | 445,243 |
| Repair & Maintenance | 63,392 | 909,271 |
| Utilities | 81,804 | 922,416 |
| Rents & Leases | 341,946 | 3,932,322 |
| Depreciation/Amortization | 188,341 | 2,189,497 |
| Interest Expense | 55,767 | 587,134 |
| Purchase Services | 232,083 | 3,654,316 |
| Advertising & PR | 17,873 | 730,234 |
| Printing & Mailing | 72,299 | 516,895 |
| Taxes & Licenses | 12,800 | 280,601 |
| All Other | 71,648 | 411,905 |
| **Total Operating Expenses** | **$3,777,856** | **$48,964,684** |
| **Operating Income (Loss)** | **($606,275)** | **($5,854,252)** |
| Non-Operating Expense (Inc) | 3,922 | 1,572,876 |
| **Income (Loss) Before Income Taxes** | **(610,197)** | **(7,427,128)** |
| Income Taxes | | 56,357 |
| Net Income (Loss) | (610,197) | (7,483,485) |
| Other Comprehensive Income: | | |
| Unrealized Gain (Loss) on Equity Securities | 54,180 | (250,009) |
| **Comprehensive Income** | **($556,017)** | **($7,733,494)** |

# EXHIBIT B

Arizona Heart Institute, Ltd.
Balance Sheet
Accrual Basis
For the Month Ended December 31, 2009


ASSETS

Current Assets:

| | | |
|---|---:|---:|
| Northern Trust-Checking | ($559,029) | |
| Northern Trust-Section 125 Plan | 5,124 | |
| Cash-Investment Accounts | 9 | |
| Marketable Securities | 5 | |
| Petty Cash | 1,160 | |
| | -------------------- | |
| Total Cash | | ($552,731) |
| | | |
| Accounts Receivable-Patients | $5,584,151 | |
| Accounts Receivable-Employees | 9,670 | |
| Accounts Receivable-Miscellaneous | 478,280 | |
| | -------------------- | |
| Accounts Receivable-Unaffiliated | $6,072,101 | |
| | -------------------- | |
| | | |
| Due From CVS | ($1,358) | |
| Accts Receivable-AHF | 12 | |
| Accts Receivable-ICF | 5,033 | |
| Accts Receivable-TRF | 63,087 | |
| | -------------------- | |
| Accts Receivable-Affiliated | $66,774 | |
| | -------------------- | |
| | | |
| A/R Collectibility Allowance-Patients | (3,256,031) | |
| | -------------------- | |
| Net Accounts Receivable | | 2,882,844 |
| | | |
| Inventory | | $69,166 |
| | | |
| Prepaid Insurance | $634,171 | |
| Deposits | 45,833 | |
| Prepaid Property Taxes | 92,273 | |
| Prepaid Other | 5,905 | |
| | -------------------- | |
| Total Prepaids | | 778,182 |
| | | -------------------- |
| Total Current Assets | | $3,177,461 |

Arizona Heart Institute, Ltd.
Balance Sheet
Accrual Basis
For the Month Ended December 31, 2009

Long-Term Assets:

Fixed Assets

| | | |
|---|---:|---:|
| Leasehold Improvements | $3,833,804 | |
| Amort - Leasehold Improvements | (1,277,244) | |
| | ------------------ | |
| Net Leasehold Improvements | | $2,556,560 |
| | | |
| Furniture & Equipment | 14,361,025 | |
| Accum Depr-F & E | (11,067,881) | |
| | ------------------ | |
| Net Furniture & Equipment | | $3,293,144 |
| | | |
| Deposits | 190,950 | |
| Other Assets-Investments | 25,922 | |
| Cash Surrender Value-Life Insurance | 574,329 | |
| Equity Investments | 140,054 | |
| Investment-AZ Heart Hospital | 369,546 | |
| Deferred Tax Asset | 3,786 | |
| | ------------------ | |
| Total Other Assets | | $1,304,587 |
| | | ------------------ |
| Total Assets | | $10,331,752 |
| | | =========== |

Arizona Heart Institute, Ltd.
Balance Sheet
Accrual Basis
For the Month Ended December 31, 2009

## LIABILITIES

Current Liabilities:

| | | |
|---|---:|---:|
| Accounts Payable-Vendors | $3,434,744 | |
| Accounts Payable-Accrued | 804,779 | |
| A/P-401K Plan | 54,969 | |
| Flexible Spending Account | 5,195 | |
| Sales Tax Payable | 978 | |
| | -------------------- | |
| Total Accounts Payable | | $4,300,665 |
| | | |
| Accrued Payroll | $183,223 | |
| Accrued Payroll Taxes | 18,363 | |
| Vacation Accrual | 329,761 | |
| Accrued Incentive Compensation | 93,526 | |
| | -------------------- | |
| Total Payroll Liabilities | | 624,873 |
| | | |
| Accrued Property Taxes | | 79,778 |
| Deferred Program Revenue | | (1) |
| Current Portion - L/T Debt | | 3,496,355 |
| | | -------------------- |
| Total Current Liabilities | | $8,501,670 |

Long-Term Liabilities:

| | | |
|---|---:|---:|
| Deferred Compensation | $690,024 | |
| L/T Notes Payable | 1,604,175 | |
| L/T Notes Payable-Shareholder | 1,255,000 | |
| Northern Trust LOC-Operating | 3,845,186 | |
| Northern Trust-LOC-Equip | 413,873 | |
| | -------------------- | |
| Total Long-Term Liabilities | | $7,808,258 |
| | | -------------------- |
| Total Liabilities | | $16,309,928 |
| | | -------------------- |

## EQUITY

| | | |
|---|---:|---:|
| Common Stock | $43,085 | |
| Paid In Capital | 1,565,858 | |
| Retained Earnings - Prior Years | (2,885,503) | |
| Accumulated Other Comprehensive Income | (302,606) | |
| Current Earnings | (4,399,008) | |
| | -------------------- | |
| Total Equity | | ($5,978,174) |
| | | -------------------- |
| Total Liabilities & Equity | | $10,331,754 |

Arizona Heart Institute, Ltd.
Income Statement - Accrual Basis
December 31, 2009

| | Month of December 2009 | Year-to-Date December 2009 |
|---|---|---|
| Total Net Patient Revenue | 2,605,328 | 35,608,732 |
| All Non-Patient Revenue | 67,550 | 2,242,644 |
| **Total Operating Revenue** | **$2,672,878** | **$37,851,376** |
| Operating Expenses: | | |
| SWBs - Physicians | 523,346 | 12,649,731 |
| SWBs - Non-Physicians | 981,092 | 13,648,203 |
| Medical Supplies | 234,933 | 2,424,466 |
| All Other Supplies | 22,076 | 268,669 |
| Repair & Maintenance | 38,889 | 1,007,889 |
| Utilities | 43,692 | 834,327 |
| Rents & Leases | 227,285 | 3,423,427 |
| Depreciation/Amortization | 177,376 | 2,110,127 |
| Interest Expense | 29,315 | 403,841 |
| Purchase Services | 221,560 | 3,370,279 |
| Advertising & PR | 2,040 | 159,505 |
| Printing & Mailing | 9,826 | 228,172 |
| Taxes & Licenses | (42,785) | 226,339 |
| All Other | 26,051 | 330,197 |
| **Total Operating Expenses** | **$2,494,696** | **$41,085,172** |
| **Operating Income (Loss)** | **$178,182** | **($3,233,796)** |
| Non-Operating Expense (Inc) | (8) | 1,165,165 |
| **Income (Loss) Before Income Taxes** | **178,190** | **(4,398,961)** |
| Income Taxes | | 50 |
| Net Income (Loss) | 178,190 | (4,399,011) |
| Other Comprehensive Income: | | |
| Unrealized Gain (Loss) on Equity Securities | 9,207 | (44,796) |
| **Comprehensive Income** | **$187,397** | **($4,443,807)** |

# EXHIBIT C

Arizona Heart Institute, Ltd.
Balance Sheet
Accrual Basis
For the Month Ended May 31, 2010


ASSETS

Current Assets:

| | | |
|---|---:|---:|
| Northern Trust-Checking | ($395,445) | |
| Northern Trust-Section 125 Plan | 1,860 | |
| Marketable Securities | 5 | |
| Petty Cash | 2,584 | |
| | ------------------ | |
| Total Cash | | ($390,996) |
| | | |
| Accounts Receivable-Patients | $4,422,900 | |
| Accounts Receivable-Employees | 2,901 | |
| Accounts Receivable-Miscellaneous | 366,863 | |
| | ------------------ | |
| Accounts Receivable-Unaffiliated | $4,792,664 | |
| | ------------------ | |
| | | |
| Due From CVS | ($1,969) | |
| Accts Receivable-AHF | 60,343 | |
| Accts Receivable-ICF | 9,716 | |
| Accts Receivable-TRF | 62,294 | |
| | ------------------ | |
| Accts Receivable-Affiliated | $130,384 | |
| | ------------------ | |
| | | |
| A/R Collectibility Allowance-Patients | (3,002,657) | |
| | ------------------ | |
| Net Accounts Receivable | | 1,920,391 |
| | | |
| Inventory | | $57,540 |
| | | |
| Prepaid Insurance | $365,660 | |
| Deposits | 58,648 | |
| Prepaid Property Taxes | 13,562 | |
| Prepaid Other | 3,949 | |
| | ------------------ | |
| Total Prepaids | | 441,819 |
| | | ------------------ |
| Total Current Assets | | $2,028,754 |

Arizona Heart Institute, Ltd.
Balance Sheet
Accrual Basis
For the Month Ended May 31, 2010


Long-Term Assets:

Fixed Assets

| | | |
|---|---|---|
| Leasehold Improvements | $3,833,804 | |
| Amort - Leasehold Improvements | (1,432,398) | |
| | ------------------- | |
| Net Leasehold Improvements | | $2,401,406 |
| | | |
| Furniture & Equipment | 14,393,903 | |
| Accum Depr-F & E | (11,662,419) | |
| | ------------------- | |
| Net Furniture & Equipment | | $2,731,484 |
| | | |
| Deposits | 190,950 | |
| Other Assets-Investments | 25,922 | |
| Cash Surrender Value-Life Insurance | 574,329 | |
| Investment-AZ Heart Hospital | 369,546 | |
| | ------------------- | |
| Total Other Assets | | $1,160,747 |
| | | ------------------- |
| Total Assets | | $8,322,391 |
| | | ========== |

Arizona Heart Institute, Ltd.
Balance Sheet
Accrual Basis
For the Month Ended May 31, 2010

LIABILITIES

Current Liabilities:

| | |
|---|---|
| Accounts Payable-Vendors | $5,167,292 |
| Accounts Payable-Accrued | 482,137 |
| A/P-401K Plan | 37,519 |
| Flexible Spending Account | 2,181 |
| Sales Tax Payable | 464 |
| | ------------------- |

| | | |
|---|---|---:|
| Total Accounts Payable | | $5,689,593 |
| | | |
| Accrued Payroll | $129,836 | |
| Accrued Payroll Taxes | 108,267 | |
| Vacation Accrual | 266,610 | |
| Accrued Incentive Compensation | (831,450) | |
| | ------------------- | |
| Total Payroll Liabilities | | (326,737) |
| | | |
| Accrued Property Taxes | | 72,646 |
| Deferred Program Revenue | | (1) |
| Accrued Income Taxes | | 74,600 |
| Current Portion - L/T Debt | | 1,658,093 |
| | | ------------------- |
| Total Current Liabilities | | $7,168,194 |

Long-Term Liabilities:

| | | |
|---|---|---:|
| Deferred Compensation | $641,491 | |
| L/T Notes Payable | 2,499,055 | |
| L/T Notes Payable-Shareholder | 1,255,000 | |
| Northern Trust LOC-Operating | 3,430,576 | |
| Northern Trust-LOC-Equip | 413,873 | |
| | ------------------- | |
| Total Long-Term Liabilities | | $8,239,995 |
| | | ------------------- |
| Total Liabilities | | $15,408,189 |
| | | ------------------- |

## EQUITY

| | | |
|---|---|---:|
| Common Stock | $43,085 | |
| Paid In Capital | 1,565,858 | |
| Retained Earnings - Prior Years | (7,329,307) | |
| Current Earnings | (1,365,430) | |
| | ------------------- | |
| Total Equity | | ($7,085,794) |
| | | ------------------- |
| Total Liabilities & Equity | | $8,322,395 |
| | | ========== |

Arizona Heart Institute, Ltd.
Income Statement - Accrual Basis
May 31, 2010

| | Month of May 2010 | Year-to-Date May 2010 |
|---|---|---|
| Total Net Patient Revenue | 1,458,674 | 8,878,759 |
| All Non-Patient Revenue | (380) | 386,969 |
| **Total Operating Revenue** | **$1,458,294** | **$9,265,728** |
| Operating Expenses: | | |
| SWBs - Physicians | 598,487 | 3,057,665 |
| SWBs - Non-Physicians | 615,026 | 3,266,662 |
| Medical Supplies | 137,173 | 647,597 |
| All Other Supplies | 9,175 | 45,365 |
| Repair & Maintenance | 25,457 | 117,524 |
| Utilities | 41,783 | 202,182 |
| Rents & Leases | 107,474 | 856,171 |
| Depreciation/Amortization | 150,630 | 751,805 |
| Interest Expense | 18,937 | 137,702 |
| Purchase Services | 217,596 | 837,616 |
| Advertising & PR | 3,505 | 44,550 |
| Printing & Mailing | 7,453 | 66,039 |
| Taxes & Licenses | 25,452 | 171,239 |
| All Other | 19,027 | 109,352 |
| **Total Operating Expenses** | **$1,977,175** | **$10,311,469** |
| **Operating Income (Loss)** | **($518,881)** | **($1,045,741)** |
| Non-Operating Expense (Inc) | (1,160) | 262,357 |
| **Income (Loss) Before Income Taxes** | **(517,721)** | **(1,308,098)** |
| Income Taxes | 3,786 | 57,331 |
| Net Income (Loss) | (521,507) | (1,365,429) |
| Other Comprehensive Income: | | |
| **Comprehensive Income** | **($521,507)** | **($1,365,429)** |

# EXHIBIT D



August 20, 2010

Dear Referring Physicians and Staff,

I am pleased to inform you of recent news regarding the Arizona Heart Institute (AHI) and Arizona Heart Hospital (AHH). Earlier this month, Vanguard Health Systems announced that it has signed definitive agreements to acquire AHI and AHH. If approved, both organizations would join Vanguard's Abrazo Health Care system which includes five hospitals throughout the Phoenix area, Abrazo Medical Group, and two health plans, Phoenix Health Plan and Abrazo Advantage.

Earlier this year, MedCath Corporation announced its plans to sell the Arizona Heart Hospital, so for many months, we have been evaluating several potential hospital partners. Also, it has been our goal to merge the Institute and the Hospital. With AHI and AHH as Vanguard entities, both organizations would operate under a single leadership and management, providing the opportunity to strengthen and streamline all aspects of patient care from diagnosis through treatment and rehabilitation. Also, this places the new organization in a better position to compete for insurance contracts and leverage the capital and management skills associated with a larger corporation.

After evaluating several potential partners, we determined that Vanguard is the best fit. While they offer us the potential for more scalable and reproducible programs, they too are committed to addressing the issues most important to Arizona Heart--preservation of our name, support of our tradition of research and education, and exemplary patient care. This alliance also provides future opportunities to greatly expand our services and patient base throughout the region. My colleagues and I fully endorse this new collaboration and are looking forward to the future.

As we integrate with Vanguard, we expect the transition to be seamless. Our name will not change, our multidisciplinary team of physicians will remain on staff, and we will continue to accept most major insurance plans. We remain committed to providing patients with the highest level of quality care you and your patients have come to expect from Arizona Heart. In fact, our goal is to exceed your expectations as a result of this new partnership with Vanguard.

Thank you for allowing us to partner with you in the care of your patients. If you have any questions regarding this news, please do not hesitate to contact us at 602-266-2200. We look forward to continuing to work with you today and for many years to come.

Sincerely,

Edward B. Diethrich, MD
Founder and Medical Director

## ARIZONA HEART
## INSTITUTE

2632 North 20ᵗʰ Street ♥ Phoenix, Arizona 85006
602-266-2200 ♥ 800-835-2920 ♥ Fax: 602-240-6160 ♥ www.azheart.com

To OPT-OUT of such fax notices, please direct your request to professionalrelations@azheart.com.

# EXHIBIT E



September, 2010

Dear Arizona Heart Institute Patient,

I am pleased to inform you of recent news regarding the Arizona Heart Institute (AHI) and Arizona Heart Hospital (AHH). Last month, Vanguard Health Systems announced that it has signed definitive agreements to acquire AHI and AHH. If approved, both organizations would join Vanguard's Abrazo Health Care system which includes five hospitals throughout the Phoenix area, Abrazo Medical Group, and two health plans, Phoenix Health Plan and Abrazo Advantage.

The purchase of the AHI physician practice by Vanguard will occur through a section 363 sale, as part of a Chapter 11 reorganization. Vanguard's decision to pursue a 363 was strategic and intentional as part of a larger vision for the Institute and the Hospital. Earlier this year, MedCath Corporation announced its plans to sell the Arizona Heart Hospital, so for many months, we have been evaluating several potential hospital partners. Also, it has been our goal to merge the Institute and the Hospital. With AHI and AHH as Vanguard entities, both organizations would operate under a single leadership and management, providing the opportunity to strengthen and streamline all aspects of patient care from diagnosis through treatment and rehabilitation. Also, this places the new organization in a better position to compete for insurance contracts and leverage the capital and management skills associated with a larger corporation.

After evaluating several potential partners, we determined that Vanguard is the best fit. While they offer us the potential for more scalable and reproducible programs, they too are committed to addressing the issues most important to Arizona Heart--preservation of our name, support of our tradition of research and education, and exemplary patient care. This alliance also provides future opportunities to greatly expand our services and patient base throughout the region. My colleagues and I fully endorse this new collaboration and are looking forward to the future.

As we integrate with Vanguard, we expect the transition to be seamless. Our name will not change, our specialized team of physicians will remain on staff, and we will continue to accept most major insurances. We remain committed to providing you with the highest level of quality care you have come to expect from us. In fact, our goal is to exceed your expectations as a result of this new partnership with Vanguard.

Due to the nature of the transaction between AHI and Vanguard, we are obligated to notify you of changes to our medical malpractice liability insurance. Following this letter are more details.

Thank you for allowing us to partner with you in your care. If you have any questions regarding this news, please do not hesitate to contact us at 602-266-2200.

Sincerely,

*E. B. Diethrich*

Edward B. Diethrich, MD
Founder and Medical Director

# ARIZONA HEART
# INSTITUTE

2632 North 20ᵗʰ Street ♥ Phoenix, Arizona 85006
602-266-2200 ♥ 800-835-2920 ♥ Fax: 602-240-6160 ♥ www.azheart.com